UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**CLANCE ROBERT LLOYD JR**  CASE NO.  6:20-CV-00694

**VERSUS**  JUDGE ROBERT R. SUMMERHAYS

**SOCIAL SECURITY ADMINISTRATION**  MAGISTRATE JUDGE CAROL B. WHITEHURST

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be affirmed.

## Administrative Proceedings

Claimant, Clance Robert Lloyd, Jr., fully exhausted his administrative remedies before filing this action in federal court. He filed an application for disability insurance benefits and an application for supplemental security income benefits alleging disability beginning on January 5, 2017. (Rec. Doc. 15-1, p. 159-71). His applications were denied. (Rec. Doc. 15-1, p. 95). He then requested a hearing, which was held on May 10, 2019 before Administrative Law Judge Kelley Day. (Rec. Doc. 15-1, p. 37 et seq). The ALJ issued a decision on June 7, 2019, concluding that Claimant was not disabled within the meaning of the Social Security

Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 15-1, p. 21-31). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 15-1, p. 4). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## **Summary of Pertinent Facts**

Claimant was born on June 18, 1974. He was 42 years old on the alleged disability onset date and 44 years old at the time of the ALJ's decision. Claimant has a GED. He last worked as a truck driver from December 2017 through March 2018. (Rec. Doc. 15-1, p. 41). The bulk of his work history includes truck driving jobs. (Rec. Doc. 15-1, p. 42-44). He lives with his mother, his sister, and his fourteen-year-old child. His mother helps him to do things around the house because he is unable. He testified that he walks with a self-prescribed cane, because his balance was off and he kept tripping. (Rec. Doc. 15-1, p. 45-46). He does not drive, because he suffered a TIA stroke and he is afraid of blacking out while driving. (Rec. Doc. 15-1, p. 46-47). Claimant claims that he is disabled due to chronic spinal stenosis, low back pain, lumbar radiculopathy, left-sided sciatic, bilateral knee osteoarthritis and pain, morbid obesity, obstructive sleep disorder, chronic fatigue, and impaired

balance. Claimant testified that he is not a candidate for back surgery, because of his health, which includes a history of obesity, tobacco use, and sleep apnea. The medical records in the record reveal the following pertinent history:

- Rapides Regional February 2016 through September 2017 – Claimant treated for erectile disfunction, obesity, and hypertension. (Rec. Doc. 15-1, p. 271-306).

- November 16, 2017 MRI of lumbar spine revealed L3-4 bulging of disc with ligamentum flavum hypertrophy and moderate degree of central canal stenosis with superimposed right posterior lateral/foraminal disc herniation/extrusion resulting in moderate to severe effacement of the right neural foramen; L4-5 posterior midline disc protrusion with left facet arthrophathy; L5-S1 right paracentral protrusion of disc with moderate deformity of adjacent right ventral thecal sac and may contact the origin of the right S1 root sleeve; bulging of L2-3 with mild annular bulging at L1-2. (Rec. Doc. 15-1, p. 310).

- Teche Action Clinic March 2017 through November 2018 – Claimant treated for chronic low back pain, hypertension, sciatica, sleep apnea, anxiety, and right knee pain. He reported that his low back pain began following an accident where he fell on a stack of crates. Physical exams showed a normal gait with no abnormalities. (Rec. Doc. 15-1, p. 316-449).

- Cardiovascular Institute of the South – March 2019 – Claimant underwent telemetry monitor, which no significant arrhythmias, tachyarrhythmias, bradyarrhythmias or pauses. The physician concluded that his symptoms were not due to cardiac etiology. He was instead referred to a neurologist. (Rec. Doc. 15-1, p. 452).

- Claimant presented to Teche Regional Hospital multiple times for low back pain. In February 2017 he had chronic low back pain radiating into the left leg for about four and a half months after a fall. Physical examination showed normal range of motion with normal spinal alignment, no CVA tenderness, vertebral tenderness, or muscle spasm. His gait was steady. He was given pain medication and discharged with a diagnosis of arthritis, strain, sciatica, and herniated disc. (Rec. Doc. 15-1, p. 466-72). At a March 1, 2017 visit to the ER, Claimant had moderate back pain, decreased range of motion, normal alignment, no CVA or vertebral tenderness, and the straight leg raise test presented pain at 45 degrees in the left lower extremity. Gait was steady and deep tendon reflexes were normal. (Rec. Doc. 15-1, p. 587-88). At a visit to the Teche Action clinic shortly thereafter, he had a positive straight leg raise test on the left and diminished reflexes in the knees, but an otherwise normal gait and range of motion in the lumbar spine. (Rec. Doc. 15-1, p. 354). By November 2017, his straight leg raise test was negative and all other physical

findings were essential normal. (Rec. Doc. 15-1, p. 333). See also Rec. Doc. 15-1, p. 609-22, December 2017 ER visit for continued back pain with no obvious gross deficits, steady gait, and normal reflexes; Rec. Doc. 15-1, p. 633-43 regarding February 2018 visit, where physical exam showed moderate lumbar pain with painful range of motion and moderate tingling of the left leg; gait limited by pain; deep tendon reflexes were brisk in the left patellar. See further Rec. Doc. 15-1, p. 686-712 wherein Claimant underwent a few sessions of physical therapy.

- Teche ER – June 2018 chest pain; diagnosed with acute myocardial infarction, anxiety, chest wall pain, gastritis, and GERD. (Rec. Doc. 15-1, p. 644-64).

- Teche ER – August 2018 – Claimant presented for bilateral osteoarthritis of knee. (Rec. Doc. 15-1, p. 676-85).

- Claimant had two emergency room visits in January 2019 for back and knee pain. The records noted that he walked with a cane. Physical exam noted normal range of motion in all extremities and no swelling. (Rec. Doc. 15-1, p. 713-27). One visit for left knee pain after a fall. Limited range of motion and swelling noted in left knee. Xray of left knee revealed severe degenerative changes of patellofemoral joint with small osteophytes off the distal femur and proximal tibia. The nurse's notes indicate he was using crutches to help him stand. (Rec. Doc. 15-1, p. 740-59).

- In February 2019 Claimant was admitted to Teche ER for observation following a suspected TIA. He was discharged as resolved and noted he would need a followup MRI at a facility that could accommodate a 400 pound human being. (Rec. Doc. 15-1, p. 770-814).

- Claimant established care with Teche Action Clinic October 2018 through April 2019. He treated for pain throughout his body with left leg numbness and neuro complaints. He was requesting a referral to see a neurologist. He weighed more than 400 pounds. Musculoskeletal exam showed that he ambulated slowly with a cane. Inspection and palpation of the nails and digits showed no abnormality. He had normal lumbar lordosis with normal lumbar range of motion. He had tenderness across the low back and tenderness to left and right knees with normal range of motion and no joint instability. He had asymmetric reflexes and diminished deep tendon reflexes on the left lower extremity. With regard to his recent TIA, the physician noted that, though he was initially diagnosed with TIA, his labs showed hypokalemia and hypocalcemia, both of which may represent severe magnesium depletion. (Rec. Doc. 15-1, p. 898-964).

The ALJ found that Claimant was not disabled, because he is capable of performing sedentary work, subject to certain restrictions, and a significant number

of qualifying jobs exist in the economy. (Rec. Doc. 15-1, p. 21-31). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. Entitlement to Benefits

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). Supplemental Security Income SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment

or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## C. **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. The ALJ's Findings and Conclusions

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since January 5, 2017. (Rec. Doc. 15-1, p. 23). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: degenerative disc disease of the lumbar spine with associated spinal stenosis, hypertension, sleep apnea, degenerative joint disease of the knees and

obesity. (Rec. Doc. 15-1, p. 24). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 15-1, p. 25). Claimant challenges this finding.

The ALJ found that Claimant has the residual functional capacity to perform sedentary work subject to certain restrictions. (Rec. Doc. 15-1, p. 25-29). Claimant challenges this finding.

At step four, the ALJ found Claimant is unable to perform any past relevant work. Claimant does not challenge this finding.

At step five, the ALJ found Claimant is capable of performing a significant number of jobs that exist in the national economy. Claimant challenges this finding insofar as he challenges the ALJ's residual functional capacity finding.

### E. The Allegations of Error

Claimant alleges the ALJ erred by 1) failing to compare medical facts to the listings and thereby failing to satisfy the requirements of *Audler v. Astrue*, 501 F.3d 466 (5th Cir. 2007); and 2) failing to articulate a rational, medical, and evidentiary basis supporting the residual functional capacity finding, because the ALJ failed to consider whether Claimant can perform activities on a regular and continuous basis.

**F.     Whether the ALJ erred in finding that Claimant did not qualify for a listing.**

An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process." *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which in turn cites 42 U.S.C. § 405(b)(1).  More particularly, "[t]he ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment." *Savoie v. Colvin*, No. 14-30-JJB-RLB, 2015 WL 1004217, at *5 (M.D. La. Mar. 5, 2015).

In *Audler v. Astrue*, the ALJ, at step three of the analysis, summarily concluded that the medical evidence in the record indicated that the claimant had impairments that were severe but not severe enough to meet or medically equal a listed impairment.  The Fifth Circuit Court of Appeals noted that "[t]he ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment." *Audler v. Astrue*, 501 F.3d at 448. The Fifth Circuit concluded that "[s]uch a bare conclusion is beyond meaningful judicial review." *Id*. quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The court then went on to explain that:

12

> By the explicit terms of the statute [42 U.S.C. § 405(b)(1)], the ALJ was required to discuss the evidence offered in support of Audler's claim for disability and to explain why she found Audler not to be disabled at that step. Although the ALJ is not always required to do an exhaustive point-by-point discussion, in this case, the ALJ offered nothing to support her conclusion at this step and because she did not, "we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not."

*Audler v. Astrue*, 501 F.3d at 448, quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986).

In this case, the ALJ considered Listing 1.02, Major Dysfunction of a Joint; 1.04, Disorders of the Spine; and 4.00, Cardiovascular System, and found that Claimant's symptoms and the medical evidence did not establish specific criteria for these listings. (Rec. Doc. 15-1, p. 25). Claimant specifically challenges the ALJ's analysis for Listing 1.04, which, at the time of Claimant's application, stated:

> 101.04 Disorders of the spine (e.g., lysosomal disorders, metabolic disorders, vertebral osteomyelitis, vertebral fracture, achondroplasia) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord, with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § Pt. 404, Subpt. P, App. 1

Thus, in order to qualify for the listing due to low back pain, the claimant must also have evidence of 1) neuro-anatomic distribution of pain, 2) limitation of motion of the spine, 3) motor loss (atrophy with associated muscle weakness or muscle

13

weakness) accompanied by sensory or reflex loss, *and* 4) positive straight-leg raising test. The ALJ considered evidence of Claimant's November 2017 lumbar MRI, which showed at L3-4 central canal stenosis and effacement of the right neural foramen and narrowing of the left foramen. The report also noted that at L5-S1 a right paracentral protrusion may contact the origin of the right S1root sleeve. (Rec. Doc. 310). Although the medical records show that Claimant possibly has some nerve root involvement, the ALJ considered medical records which often showed normal physical findings without motor loss or reflex loss. See e.g. Rec. Doc. 15-1, p. 587-88; 609-22). Further, although Claimant did have two positive straight leg tests of the left leg in March 2017 (Rec. Doc. 15-1, p. 587-88; p. 354), by November 2017 those tests were negative, and the most recent examinations were negative. (See Rec. Doc. 15-1, p. 333). Therefore, the ALJ did not err in finding that Claimant did not qualify for disability under Listing 1.04. The fact that the ALJ did not explicitly analyze each listing in comparison to the medical records at step three is harmless, where the ALJ considered all issues in detail in the subsequent RFC finding. See *Hurst v. Colvin*, 639 F. App'x 1018, 1022 (5th Cir. 2016).

    G.    **<u>Whether the ALJ properly determined Claimant's RFC.</u>**

Claimant next challenges the ALJ's finding that Claimant has the residual functional capacity (RFC) to perform sedentary work with restrictions for sitting no more than 30 minutes before having to stand, though he can sit for a total of six hours

14

over the course of an eight-hour day, among other physical restrictions. Claimant argues that the ALJ failed to find that Claimant is capable of performing such activities on a regular and continuous basis. The Fifth Circuit summarized the applicable law as follows:

> First, SSR 96–8p provides that a residual functional capacity (RFC) "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." 1996 WL 374184, *1 (S.S.A.1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* at *2. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. "However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work...." *Id.* RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at *5. "Each function must be considered separately." *Id.* "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis...." *Id.* at *7. The RFC assessment must include a resolution of any inconsistencies in the evidence. *Id.*
>
> Second, SSR 96–9p also provides that
>
>> [i]nitially, the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities.... The impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50. Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of

15

> sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions.

1996 WL 374185, *2 (S.S.A.1996). SSR 96–9p also defines exertional capacity as the aforementioned seven strength demands and requires that the individual's capacity to do them on a regular continuing basis be stated. *Id.* at *5.

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)

In determining Claimant's RFC, the ALJ considered the pertinent medical records discussed above and provided a detailed analysis of same. (Rec. Doc. 15-1, p. 25-29). The ALJ did not give any weight to the state agency's medical consultant, Dr. Johnny Craig, who the ALJ found to be not persuasive. Notably, none of Claimant's physicians opined that he was unable to work in at least a sedentary capacity on a regular and continuing basis. Claimant presented no medical evidence supporting that he is incapable of sedentary work subject to the ALJ's determined restrictions. Further, the ALJ accounted for the medical records which showed Claimant had a history of low back pain and objective testing revealing abnormalities; however, none of the medical evidence shows that Claimant is incapable of performing sedentary work subject to the ALJ's restrictions. Accordingly, the Court finds that the ALJ did not err in assessing Claimant's RFC and finding him not disabled.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[1]

---

[1] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed in Lafayette, Louisiana, this 12th day of January, 2022.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE