UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**CLANCE ROBERT LLOYD, JR.**　　　　　**CASE NO. 6:20-CV-00694**

**VERSUS**　　　　　**JUDGE ROBERT R. SUMMERHAYS**

**SOCIAL SECURITY ADMINISTRATION**　　　　　**MAGISTRATE JUDGE WHITEHURST**

**RULING ON OBJECTIONS**

After the Social Security Administration ("the Administration") denied Clance R. Lloyd, Jr.'s application for disability insurance benefits and supplemental security income ("SSI") payments, Lloyd filed a complaint in this Court seeking review of the decision.[1] In accordance with the standing orders of the Court, the matter was assigned to the Magistrate Judge for Report and Recommendation ("R&R"). The Magistrate Judge recommends the decision of the Commissioner be affirmed, and Plaintiff has filed objections to that recommendation.[2] After careful consideration, the Court accepts the Magistrate Judge's recommendation, but modifies the findings set forth in section F of the R&R, as set forth below.[3]

**I.**
**APPLICABLE LEGAL STANDARDS**

**A.   Standard of Review**

Judicial review of the denial of disability benefits and supplemental security income payments is limited to a determination of: (1) whether substantial evidence supports the final

---

[1] "Title XVI of the Social Security Act, 42 U.S.C. § 1381, provides for supplemental security income for the disabled. Title II of the Act provides for federal disability insurance benefits." *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).
[2] ECF Nos. 35, 38.
[3] *See* ECF No. 35 at 12-14. In section F, the Magistrate Judge analyzed an incorrect listing.

decision, and (2) whether the proper legal standards were used to evaluate the evidence.[4] If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[5] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[7] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence, trying the issues de novo, or substituting its judgment for that of the Commissioner.[8] Conflicts in the evidence and credibility assessments are for the Commissioner to resolve.[9]

**B.     Entitlement to Benefits**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."[10] By regulation, the Administration follows a five-step process to determine whether a claimant is disabled.[11] In the first two steps, not at issue here, the claimant must show he is not currently engaged in substantial

---

[4] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *see also Johnson* at 343 n.1 ("judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program") (citing *Davis v Heckler*, 759 F.2d 432, 435 (5th Cir. 1985)).
[5] *Id.*; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).
[6] *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).
[7] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames* at 164).
[8] *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).
[9] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).
[10] 42 U.S.C. § 423(d)(1)(A). "The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income." *Johnson* at 344.
[11] 20 C.F.R. § 404.1520(a)(4).

gainful activity and has a severe impairment.[12] At the third step the claimant must show that his impairment "meets or equals the severity of an impairment listed" in 20 C.F.R., Part 404, Subpart B, Appendix 1.[13] If a claimant makes such a showing, the inquiry is at an end and the claimant is entitled to benefits.[14] If the claimant fails to make such a showing, the analysis proceeds to step four, in which the claimant must show his impairment prevents him from doing his past work.[15] If the claimant is unable to perform his past work, the analysis proceeds to the fifth and final step. At step five, the Administration evaluates the claimant's residual functional capacity, age, education, and work experience to determine whether the claimant "can make an adjustment to other work."[16] If the claimant cannot do other work, he will be found disabled. If at any step the claimant is determined to be disabled or not disabled, the inquiry ends.[17] The claimant bears the burden of proof at the first four steps; the Administration bears the burden at the fifth step.[18]

## II.
### DISCUSSION[19]

Plaintiff argues two points of error in the proceedings below: (1) that the Administrative Law Judge ("ALJ") erred at step three of the sequential analysis by failing to properly consider whether Plaintiff's impairments met the criteria of Listing 1.04A or 1.04C; and (2) that the ALJ erred at step five by determining Plaintiff can make an adjustment to other work.

---

[12] *Id.* at § 404.1520(b) and (c); *see also Sun v. Colvin*, 793 F.3d 502, 507 n.2 (5th Cir. 2015).
[13] *Id.* at § 404.1520(d).
[14] *Id.*
[15] *Id.* at (a)(4)(iv).
[16] *Id.* at (a)(4)(v).
[17] *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).
[18] *Id.*
[19] The procedural and factual background of this matter is correctly set forth in detail in the R&R and will not be repeated here. *See* ECF No. 35 at 1-7; *see also* ECF No. 38 at 1.

A.      **Whether the ALJ erred at step three of the sequential analysis.**

In the decision below, the ALJ found at step two that Lloyd suffers from degenerative disc disease of the lumbar spine with associated spinal stenosis, hypertension, sleep apnea, degenerative joint disease of the knees and obesity, which collectively constitute a "severe impairment" under the regulations.[20] At step three the ALJ concluded that those impairments were not severe enough to meet or medically equal one of the listed impairments.[21] Lloyd contends that the ALJ erred at step three when she determined his impairments were not severe enough to "meet or exceed the criteria" of Listing 1.04 (Disorders of the spine).[22] Specifically, Lloyd contends the ALJ erred by merely citing to Listing 1.04, without conducting any analysis of whether his evidence satisfied that listing.[23] Lloyd further contends that the medical evidence of record supports his claim that his impairments meet the criteria of Listing 1.04. In particular, he contends that his MRI taken November 16, 2017 shows spinal stenosis "with possible impingement of the right S-1 nerve root sleeve," and other medical evidence in the record documents his severe pain, limitation of joint movement, paresthesia in the left leg, diminished reflexes, and intermittent positive straight leg-raising tests.[24] He further contends that the ALJ's failure to compare the findings of the November 16, 2017 MRI to Listing 1.04 constitutes error that requires remand, citing *Audler v. Astrue*.[25]

---

[20] ECF No. 15-1 at 24; *see also* 20 C.F.R. § 404.1520(c) (A "severe impairment" is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities. . . .")

[21] ECF No. 15-1 at 25. The ALJ considered Listings 1.02 (Major Dysfunction of a Joint), 1.04 (Disorders of the Spine), and 4.00 (Cardiovascular System) and found "the medical evidence does not establish the specific criteria of these listings, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." *Id.*

[22] ECF No. 38 at 4; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

[23] ECF No. 38 at 3.

[24] ECF No. 38 at 3-4.

[25] In *Audler v. Astrue*, 501 F.3d 446 (5th Cir. 2007), the Fifth Circuit reversed the ALJ's determination of non-disabled and held that the plaintiff met her burden of demonstrating that she met the Listing requirements for § 1.04(A), where plaintiff submitted a diagnostic checklist from her treating physician indicating that she had most of the symptoms of nerve root compression. *Id.* at 449. *Audler* is distinguishable from the instant case because: (1) in *Audler*, the court held that the ALJ erred in failing to state *any* reasons

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment found in the Listings. The Listings describe impairments that the Administration considers severe enough to prevent a claimant from doing any gainful activity, regardless of age, education, or work experience.[26] A claimant whose impairment(s) meets or medically equals a listed impairment will be found disabled without consideration of age, education, and work experience.[27] Therefore, the criteria in the Listings are "demanding and stringent."[28] The medical criteria defining the listed impairments are deliberately set at a higher level of severity than the statutory standard for receiving benefits because the Listings are "designed to operate as a presumption of disability that makes further inquiry unnecessary."[29]

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing."[30] A diagnosis alone is insufficient to establish the criteria of a listing; rather, an impairment(s) meets the requirements of a listing "when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement" of the

---

for her adverse determination at step three, and thus the court would not give deference to the ALJ's determination; and (2) the court found that *no* medical evidence was introduced to contradict the plaintiff's contention that she met the requirements for § 1.04(A). *Id.* at 448–49. For the reasons discussed in this Ruling, *Audler* does not control here.

[26] 20 C.F.R. § 404.1525(a). The Listings contain two parts. Part A primarily applies to adults; Part B applies exclusively to children and is "never use[d] . . . to evaluate individuals who are age 18 or older." *Id.* at § (b). The Magistrate Judge evaluated Plaintiff's claim using a Listing from Part B. *See* ECF No. 35 at 13.

[27] 20 C.F.R. § 404.1520(d); *see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) ("a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors"). *Heckler v. Campbell*, 461 U.S. 458, 460 (1983) ("A claimant who establishes that he suffers from one of these [listed] impairments will be considered disabled without further inquiry.")

[28] *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

[29] *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) ("[S]tep three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background.")

[30] 20 C.F.R. § 404.1525(c)(3).

regulations.[31] Thus, an impairment or combination of impairments "that manifests only some of those criteria, no matter how severely, does not qualify."[32] Again, the plaintiff bears the burden of proving that his impairment meets or equals a listing.[33]

The Listing at issue in this matter is Listing 1.04, which applies to disorders of the spine. Plaintiff asserts he meets this listing under section A and under section C.[34] Listing 1.04 provides in pertinent part:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> . . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[35]

---

[31] *Id.* at §§ (d) and (c)(3); *see also id.* at 404.1509 (an impairment meets the duration requirement if it is expected to result in death or it has lasted or is expected to last at least twelve months).
[32] *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).
[33] *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999) (citing *Fraga v. Bowen*, 810 F.2d 1296 (5th Cir. 1987)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).
[34] ECF No. 38 at 3. Lloyd specifically states he meets Listing 1.04C. *See id.* at 4. Because Lloyd makes no argument indicating he meets § 1.04B, the Court presumes Lloyd is arguing he meets § 1.04A, in addition to § 1.04C.
[35] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 (2017), *available at* https://secure.ssa.gov/poms.nsf/lnx/0434121013 (last visited March 28, 2022).

1.   **Whether Plaintiff meets the requirements of Listing 1.04A**

As set forth above, in order to meet Listing 1.04A, there must be a spinal disorder resulting in compromise of a nerve root or the spinal cord, with evidence of nerve root compression characterized by: (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and (4) if there is involvement of the lower back, then positive straight-leg raising test (sitting and supine). In reviewing the medical records, the ALJ found Lloyd had normal range of motion of the spine at his examinations conducted on February 26, 2017, March 11, 2017, November 25, 2017, February 8, 2018, February 21, 2018, March 6, 2018, April 10, 2018, July 11, 2018, August 24, 2018, November 5, 2018, January 18, 2019, January 22, 2019, January 23, 2019, January 25, 2019, February 22, 2019, March 18, 2019, and April 30, 2019.[36] However, she noted decreased range of motion at his examination on March 1, 2017.[37] The ALJ noted Lloyd had normal reflexes at his examinations on March 1, 2017.[38] He had somewhat diminished reflexes in the knees on March 11, 2017,[39] and diminished reflexes in the left lower extremity on December 26, 2017, February 21, 2018, March 6, 2018, April 10, 2018, July 11, 2018, August 24, 2018, November 5, 2018, January 23, 2019, February 22, 2019, and March 18, 2019[40] The ALJ noted Llloyd had a positive straight leg raise test on March 11, 2017.[41] However, he had a negative straight leg test on November 25, 2017.[42] Based upon these findings, the Court holds that

---

[36] ECF No. 15-1 at 26-28; *see also id.* at 330, 362, 387, 401, 412, 421, 432, 571, 613, 637-38, 725, 744, 762 909, 917, 948.
[37] *Id.* at 26; *see also id.* at 587.
[38] *Id.* at 27, 585
[39] *Id.* at 27, 351
[40] *Id.* at 27, 322, 362, 388, 401, 412, 421, 432, 906, 917, 949
[41] *Id.* at 27, 354
[42] *Id.* at 27, 330. The Court additionally notes the records reflect no symptoms of muscle weakness. *See* ECF No. 15-1 at 322, 329-30, 363, 388, 401, 412, 421, 432, 906, 917, 948.

substantial evidence supports the ALJ's determination that Plaintiff does not meet the requirements of Listing 1.04A, as he does not satisfy all the criteria of that listing, nor has he met the duration requirement.[43]

### 2. Whether Plaintiff meets the requirements of Listing 1.04C

As set forth above, in order to meet Listing 1.04C, there must be a spinal disorder resulting in compromise of a nerve root or the spinal cord, with lumbar spinal stenosis resulting in pseudoclaudication, manifested by chronic nonradicular pain and weakness, and resulting in the inability to ambulate effectively.[44] An "inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."[45] This definition includes "generally having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."[46]

---

[43] Plaintiff argues the Magistrate Judge "seems to think the ALJ can dismiss [positive straight-leg raising tests] because they are intermittent, yet the 1.04 language does not indicate that the positive test must remain a constant. . . ." *See* ECF No. 38 at 4. The Court disagrees. As noted earlier, the medical criteria defining the listed impairments were deliberately set at a higher level of severity than the statutory standard for receiving benefits because the Listings were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Zebley*, 493 U.S. at 532. The applicable regulation states that the Administration will find a claimant's impairment "meets the requirements of a listing when it satisfies all of the criteria of that listing, . . . and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, at 530.
[44] 20 C.F.R. Part 404, Subp. P, Appendix 1, § 1.04 (2017); *see also Weary v. Astrue*, 288 Fed.Appx. 961, 966 (5th Cir. 2008).
[45] 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(1).
[46] *Weary* at 966 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(1)).

Lloyd has not pointed to substantial evidence in the record supporting his argument that he meets Listing 1.04C, because he has not demonstrated an inability to ambulate effectively. While there is evidence in the record that Lloyd uses an unprescribed cane,[47] "reliance on a single cane does not limit the function of both upper extremities, as would reliance on a walker, two crutches or two canes as required under § 1.00B2b(1)."[48] Accordingly, the Court concludes substantial evidence in the record supports the ALJ's determination that Lloyd's impairments do not meet or equal Listing 1.04C.

**B.     Whether the ALJ erred at step five by determining Plaintiff can make an adjustment to other work.**

The ALJ determined at step five that Lloyd has the residual functional capacity to perform sedentary work with additional restrictions. The ALJ further determined there are jobs existing in significant numbers in the national economy that Lloyd can perform. Lloyd contends the ALJ erred by failing to provide "reasons as to why the Plaintiff's conditions allowed him to work at a sedentary job if these conditions were met," and erred by disregarding "Plaintiff's testimony about his crippling pain and the opinion of the Plaintiff's physician that he could not work."[49] Plaintiff made these same arguments to the Magistrate Judge, and the Court agrees with her analysis and recommendation. After a review of the ALJ's opinion, as well as the report of the Magistrate Judge, the Court concludes there is substantial evidence in the record supporting the ALJ's determination that there are jobs existing in significant numbers in the national economy that Plaintiff can perform.[50]

---

[47] *See e.g* ECF No. 15-1 at 25-26 28.
[48] *Weary* at 967.
[49] ECF No. 38 at 5.
[50] *See* ECF No. 15-1 at 25-29, 30-31; ECF No. 35 at 14-16.

## III.
### CONCLUSION

For the reasons set forth herein, the recommendation of the Magistrate Judge is accepted and the decision of the Commissioner to deny disability benefits is AFFIRMED.

THUS DONE in Chambers on this 4th day of April, 2022.

                                                ROBERT R. SUMMERHAYS
                                                UNITED STATES DISTRICT JUDGE